**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**NAN VOLLETTE,**
         **Plaintiff,**

**v.**                             **CASE #:  2:12-cv-231**
                                       **JURY TRIAL DEMANDED**

**BILL WATSON,**
**Serve: Portsmouth Sheriff's Office**
        **701 Crawford Street**
        **Portsmouth, VA  23704**

**ELIZABETH BAKER,**
**Serve:**
        **701 Crawford Street**
        **Portsmouth, VA  23704**

**WILLIAM SUGGS**
**Serve:**
        **701 Crawford Street**
        **Portsmouth, VA  23704**

**JACK BENZIE**
**Serve:**
        **701 Crawford Street**
        **Portsmouth, VA  23704**

**YOLANDA NATIVIDAD**
**Serve:**
        **701 Crawford Street**
        **Portsmouth, VA  23704**

        **Defendants.**

## <u>AMENDED COMPLAINT</u>

Plaintiff, Nan Vollette, by and through her attorneys, files this complaint against the

defendants for violations of 42 U.S.C. §1983, and the common law, by way of Supplemental

Jurisdiction, of her constitutional rights under the Fourth Amendment to the United States

Constitution and in support thereof states as follows:

## A.  PARTIES

1.      Plaintiff, Nan Vollette (hereinafter "Nan"), is an individual who is a citizen of the Commonwealth of Virginia and at all relevant times herein was working for a health care contractor inside the Portsmouth City Jail in Portsmouth, Virginia.

2.      Defendant Bill Watson, is an individual who is a citizen of the Commonwealth of Virginia and the Sheriff for the City of Portsmouth.

3.      Defendant Elizabeth Baker is an individual who is a citizen of the Commonwealth of Virginia and at all relevant times herein was a Deputy Sheriff employed by the City of Portsmouth, Virginia Sheriff's Department acting under the color and badge of authority as a Deputy Sheriff for the City of Portsmouth, Virginia.

4.      Defendant William Suggs is an individual who is a citizen of the Commonwealth of Virginia and at all relevant times herein was a Deputy Sheriff employed by the City of Portsmouth, Virginia Sheriff's Department acting under the color and badge of authority as a Deputy Sheriff for the City of Portsmouth, Virginia.

5.      Defendant Yolanda Natividad is an individual who is a citizen of the Commonwealth of Virginia and at all relevant times herein was a Deputy with the Portsmouth Sheriff's Department acting under the color and badge of authority as a Deputy Sheriff for the City of Portsmouth, Virginia.  At all relevant times herein, Natividad was a Captain with the Sheriff's Department and exercised supervisory control and authority over defendant Baker.

6.      Defendant Jack Benzie is an individual who is a citizen of the Commonwealth of Virginia and at all relevant times herein was a Deputy with the Portsmouth Sheriff's Department acting under the color and badge of authority as a Deputy Sheriff for the City of Portsmouth,

Virginia. At all relevant times herein, Benzie was a Major with the Sheriff's Department and exercised supervisory control and authority over defendants Suggs and Baker.

7.     The defendants are all sued in their individual capacities.

8.     Pursuant to the laws of the Commonwealth of Virginia, the City of Portsmouth Sheriff's Department maintains and operates the Portsmouth City Jail.

9.     On or about April 22, 2011, Defendants Baker, Benzie, and Suggs were employed by the City of Portsmouth Sheriff's Department.

10.    On or about April 22, 2011, Defendant Watson was the City of Portsmouth Sheriff.

11.    At all relevant times herein, on or about April 22, 2011, Defendants were acting under color of law, of a statute, ordinance, regulation, custom, or usage.

12.    On or about April 22, 2011, Plaintiff, while inside the Portsmouth City Jail and while attempting to report to work, was subjected to a demeaning and degrading visual body cavity search and strip search, against her will, by Defendant Baker and at the direction of Defendant Watson and under the direct supervision of Defendant Suggs without any individualized suspicion of criminal activity.

## B.  JURISDICTION

13.    The Court has jurisdiction over the lawsuit under 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution as Nan brings this action to redress deprivation of her rights secured to her by the Fourth Amendment to the United States Constitution, 42 U.S.C. §1983 and the common law.

14.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§1331, and 42 U.S.C. §1983.

15.     Nan also invokes supplemental jurisdiction of this Court pursuant to 28 U.S.C. §

1367 over her state law claims against Defendants for common law false imprisonment and

conspiracy to violate her constitutional rights and to commit false imprisonment as these

common law claims form the part of the same case or controversy.

**VENUE**

16.     Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a substantial

part of the events or omissions giving rise to this claim occurred in this district and it is the home

jurisdiction of the defendants.

17.     All acts took place in Portsmouth, Virginia.

**FACTS**

18.     On or about April 22, 2011, Correct Care Solutions was providing mental and

physical health services to the inmates of the Portsmouth City Jail by a contract or other

agreement between them and the City of Portsmouth or the City of Portsmouth Sheriff's

Department.

19.     On or about April 22, 2011, Nan Vollette was an employee of Correct Care

Solutions.

20.     On or about April 22, 2011 Nan was a mental health counselor hired by Correct

Care Solutions to provide mental health counseling services to the inmates at the Portsmouth

City Jail.

21.     On or about April 22, 2011, defendant Watson ordered that all civilian contract

employees be subjected to a strip search and visual body cavity search.

22.     Watson did not have any individualized suspicion that any particular employee,

including the plaintiff, was carrying on or about their person any contraband or illegal item into

or out of the jail or committing any crime.

23.     Watson and the other defendants had actual knowledge that in order to conduct a strip-search or visual body cavity search legally of any civilian, non-inmate person at the jail they needed to have an individualized suspicion of illegal activity or of contraband being brought into or taken out of the jail for each person that was going to be searched.

24.     On or about April 22, 2012, defendant Benzie, with full knowledge of the illegality and impropriety of the searches in question, ordered the plaintiff to be strip searched and be subjected to a demeaning visual body cavity search.

25.     Defendant Natividad carried out those Orders issued by Benzie, demanding that all the civilian personnel be subjected to the demeaning strip searches and visual body-cavity searches.

26.     On or about April 22, 2011 Nan reported to work at the Portsmouth City Jail.

27.     On that day, instead of being allowed to go directly to her workspace, defendant Baker directed Nan to enter an administrative area of the jail with an exposed window to the outside.

28.     Baker then directed Nan to remove her clothing and told her that she was required to undergo a strip search and visual body cavity search.

29.     Baker threatened Nan with permanent removal from the jail if she did not submit to the search.

30.     At no time did Baker have any individualized suspicion that Nan had any illegal items or contraband on or about her person.

31.     Baker told Nan that she had to bend over and cough so that Baker could peer into her rectum and vagina.

32.     When Nan questioned the appropriateness of the search, Baker asked defendant Suggs to come into the room.

33.     Suggs opened the door, knowing full well, as Baker's supervisor, that the search was taking place and that it was illegal under the Fourth Amendment.

34.     Suggs made no effort to stop the illegal search.

35.     Fearing that she would be fired or otherwise lose her employment if she did not submit, Nan removed her clothing including her bra and panties.

36.     While Nan was in a state of undress, Baker refused to allow Nan to leave the room without fear of losing her job.

37.     Baker forced Nan to bend her knees so that Nan's vagina and rectum were fully exposed to Baker.

38.     Baker then peered into Nan's vagina and rectum, still not allowing Nan to refuse this unlawful search without fear of either being terminated from her employment or being allowed to return to the Portsmouth Jail without being subjected to the search a second time.

39.     At some point while Nan was in this state of undress and with her rectum and vagina fully exposed, Baker stated "Now you know how the inmates feel when we do this to them."

40.     After being finally allowed to put her clothing back on, Nan was told that she was not allowed to leave her place of employment or she would be required to have the demeaning search conducted again.

41.     By telling Nan that she would be barred from the building if she refused the search, Nan was forced to stay or risk losing her job.

42.     By telling Nan that she would be barred from the building if she refused the

search, the defendants forced Nan to stay in the room and submit to the search.

43.     By requiring Nan to choose between submitting to the illegal and demeaning search and losing her job the defendants denied Nan's freedom of action and required her to remain in the facility against her will and operated as an intentional restriction on her freedom without legal right.

44.     At all times herein, defendants Watson, Benzie, and Suggs knew that the searches were taking place.

45.     At all times relevant herein, defendants Benzie and Suggs had the legal duty to prevent any illegal search from taking place within the facility.

46.     At all times relevant herein, defendant Watson had the legal duty to prevent any illegal search from taking place within the facility.

47.     At all times relevant herein, defendants Watson, Benzie, Natividad, and Suggs ordered Baker to conduct the search.

48.     At all relevant times herein, the defendants acted in concert and with each other and had an agreement between themselves to conduct the illegal searches and violate Nan's constitutional rights and to keep her in the facility against her will.

49.     At all relevant times herein the defendants carried out the search in furtherance of their agreement to observe Nan's vagina and rectum.

50.     At all relevant times herein the defendants agreed to require Nan to submit to the illegal and wrongful search or be forced out of her workplace.

51.     At all relevant times herein the defendants knew that if Nan refused to search and was forced out of her workplace in the jail that she could lose her job with Correct Care Solutions.

52.     At all relevant times herein the defendants, by forcing Nan to remove her clothing and submit to the illegal search or be forced out of her workplace, forced Nan to stay in the room in which she was being searched, thus causing a restriction on her liberty to leave the room in which the search was taking place.

53.     At all times relevant herein, defendant Watson directed the searches with full knowledge that they were being conducted without individualized suspicion of any illegal activity or contraband being brought into the facility by the plaintiff.

54.     At all relevant times herein, Suggs and Benzie, as a supervisory Deputy Sheriffs, had the duty and authority to stop the searches they knew to be unlawful and illegal under the Fourth Amendment and, notwithstanding the knowledge they had about this search as pleaded above, they not only failed to stop the illegal conduct but they directly encouraged it and ordered it to continue.

55.     At all relevant times herein the defendants, and each of them, knew that strip searches and visual body cavity searches were to be conducted only with individualized suspicion of illegal activity or contraband on the part of the person to be searched.

56.     As a direct result of the above acts, Nan suffered, and has continued to suffer, great humiliation and emotional distress, a feeling of being invaded, loss of sleep, nightmares, and other emotional harm.

57.     On Friday, April 27, 2012, Nan filed this lawsuit.

58.     On Monday, April 30, 2012, while Nan was at work seeing patients in the Portsmouth City Jail, Nurse Emma-Floyd Sharp, came into the room and asked Nan to step into the other room.  Emma-Floyd Sharp told Nan that Nan needed to gather her things and leave because Defendant Bill Watson had revoked Nan's security clearance.

59.     Nan was escorted out of the jail by Lieutenant Archer, who works at the jail under the supervision of Sheriff Bill Watson.

60.     Upon information and belief, Defendant Watson ordered the revocation of Nan's security clearance.

61.     Nan cannot work at the jail without her security clearance, so the revocation of her clearance amounted, in effect, to a termination from her job at the jail.

**COUNT I**
**VIOLATION OF 42 U.S.C. §1983**
**(AGAINST ALL DEFENDANTS)**

62.     Nan incorporates by reference paragraphs 1 through 61 above as if fully set forth herein.

63.     Nan had the constitutional right under the Fourth Amendment to the United States Constitution not to be subjected to unreasonable searches.

64.     By requiring Nan to undergo a strip search and a visual body cavity search without individualized suspicion of illegal activity, all the defendants violated Nan's Fourth Amendment right to be free from unreasonable searches.

65.     At all relevant times herein, the defendants acted under the color of state law and under the color and badge of their authority.

66.     The defendants' acts were the proximate cause of damages Nan sustained.

67.     The intentional, reckless, and malicious acts of the defendants violated Nan's rights as guaranteed by the Fourth Amendment to the United States Constitution, for which Defendants are individually and personally liable.

68.     The wrongful acts committed were without justification, were intentional, malicious, and reckless and done with full knowledge of their impropriety in order to further

their own personal gain, and violated Nan's constitutional rights.

WHEREFORE, Nan demands judgment against each of the defendants for Count I in the sum of FIVE MILLION DOLLARS ($5,000,000), prejudgment and post-judgment interest, costs of suit, a preliminary and permanent injunction prohibiting the defendant from conducting further strip searches on Nan absent individualized suspicion of illegal activities, and any other relief this Court deems appropriate.

## COUNT II
## FALSE IMPRISONMENT
## REMOVING CLOTHING AND SUBMITTING TO THE SEARCH
## ALL DEFENDANTS

69.     Nan incorporates by reference paragraphs 1 through 68 as if fully set forth herein.

70.     The defendants' illegal actions in forcing Nan to submit to the search and removing all her clothes and then remaining in the Jail or submit to another search or lose her job limited Nan's freedoms and constituted false imprisonment.

WHEREFORE, Nan demands judgment against each of the defendants for Count II in the sum of FIVE MILLION DOLLARS ($5,000,000), prejudgment and post-judgment interest, costs of suit, and any other relief this Court deems appropriate.

## COUNT III
## FALSE IMPRISONMENT
## REFUSING TO ALLOW THE PLAINTIFF TO EXIT THE BUILDING
## ALL DEFENDANTS

71.     Nan incorporates by reference paragraphs 1 through 70 as if fully set forth herein.

72.     The defendants' illegal actions in forcing Nan to submit to the illegal search and removing all her clothes and then remaining in the search room naked or being removed from the facility limited Nan's freedoms and constituted false imprisonment.

WHEREFORE, Nan demands judgment against each of the defendants for Count III in the sum of FIVE MILLION DOLLARS ($5,000,000), prejudgment and post-judgment interest, costs of suit, and any other relief this Court deems appropriate.

## COUNT IV
## COMMON LAW CIVIL CONSPIRACY

73.     Nan incorporates by reference paragraphs 1 through 72 as if fully set forth herein.

74.     Defendants, jointly and in concert, agreed to conduct the unlawful search and unlawfully search Nan and keep her from leaving her place of work.

75.     Defendants accomplished, through their concerted action, the unlawful search of Nan and the false imprisonment through unlawful means.

WHEREFORE, the plaintiff demands damages in the amount of FIVE MILLION DOLLARS AND NO CENTS ($5,000,000.00) and her costs in her behalf expended.

## COUNT V
## PUNITIVE DAMAGES FOR COMMON LAW CLAIM FOR CONSPIRACY
## (AGAINST ALL DEFENDANTS)

76.     Nan incorporates by reference paragraphs 1 through 75 as if fully set forth herein.

77.     The actions of the defendants were intentional and done with the full knowledge of their illegality and wrongful nature and done with malice.

WHEREFORE, Nan demands judgment against each of the defendants for Count V in the sum of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), prejudgment and postjudgment interest, costs of suit, and all other relief the Court deems appropriate.

## COUNT VI
## PUNITIVE DAMAGES FOR VIOLATION OF 42 U.S.C. §1983
## (AGAINST ALL DEFENDANTS)

78.     Nan incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

79.     The defendants' actions in this case were intentional and reckless and done with complete and utter disregard for Nan's Constitutional rights.

80.     The defendants' actions, and the manner in which the searches were carried out, were so callous and with such utter disregard for Nan's emotions and human dignity that they demonstrate complete lack of concern for the rights provided to Nan under the United States Constitution.

WHEREFORE, Mary demands judgment against each of the defendants for Count VI in the sum of FIVE MILLION DOLLARS ($5,000,000), prejudgment and postjudgment interest, costs of suit, and all other relief the Court deems appropriate.

## COUNT VII
## 42 U.S.C. §1983, FIRST AMENDMENT VIOLATION
## (AGAINST DEFENANT WATSON)

81.     Nan incorporates by reference paragraphs 1 through 80 as if fully set forth herein.

82.     By revoking Nan's security clearance after Nan filed suit, Defendant Watson retaliated against Nan for exercising her First Amendment right to seek redress in court on a matter of public concern.

83.     Defendant Watson's retaliatory action violates the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment.

84.     WHEREFORE, Nan demands a temporary restraining order or preliminary injunction reinstating Nan's security clearance and access to work at the jail, a permanent injunction prohibiting the defendant from engaging in further retaliatory action, money damages of an appropriate amount, and any other relief this Court deems appropriate.

**A JURY TRIAL IS DEMANDED IN THIS MATTER**

NAN VOLLETTE


_____/s/_____
By Counsel

David P. Morgan, Esquire (VSB #70211)
Daniel Trimmer (VSB #79150)
Cooperating Attorneys for the ACLU of Virginia
Cravens & Noll, P.C.
9011 Arboretum Parkway
Suite 200
Richmond, Virginia 23236
(804) 330-9220
(804) 330-9458 Facsimile
dmorgan@cravensnoll.com
dtrimmer@cravensnoll.com

Rebecca K. Glenberg (VSB #44099)
Thomas O. Fitzpatrick (VSB #80364)
American Civil Liberties Union of
       Virginia Foundation, Inc.
530 E. Main Street, Suite 310
Richmond, Virginia 23219
Telephone: (804) 644-8080
Facsimile:  (804) 649-2733
rglenberg@acluva.org
tfitzpatric@acluva.org