

**EXHIBIT**

A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

NAN VOLLETTE, et al.                          :
                                              :
                        Plaintiffs,           :
                                              :
        v.                                    :    CIVIL ACTION NO. 2:12cv231
                                              :
BILL WATSON, et al.                           :
                                              :
                        Defendants.           :

## DEFENDANTS' SUPPLEMENT TO
## MOTION FOR SUMMARY JUDGMENT

Defendants, Bill Watson, Elizabeth Baker, William Sugg, Jack Benzie, Yolanda Natividad, Candace Mabry, and Mack Keese, by counsel, and in support of their Motion for Summary Judgment, hereby supplement their previously filed Memorandum of Law in Support of Motion for Summary Judgment and Reply to Plaintiffs' Opposition to Motion for Summary Judgment.

Identifying the type of search to which plaintiffs were subject is material to the Court's determination of whether defendants violated plaintiff's constitutional rights and/or are entitled to qualified immunity. In their opposition, and based on their Declarations attesting that Deputies Baker and Mabry "appeared" to be viewing their private parts, plaintiffs attempt to raise a material dispute as to fact by blurring the distinction between a standard strip search and a visual body cavity search. As set forth in defendants' Motion for Summary Judgment, the distinction between the two types of searches is significant to the degree of "reasonable suspicion" necessary to render the searches lawful under *Leverette v. Bell*, 247 F.3d 160, 168 (4th Cir. 2001).

In order to support a finding that they were subject to visual body cavity searches rather than standard strip searches, plaintiffs must establish that Deputies Baker and Mabry required them "to expose [their] anal and vaginal cavities for visual inspection", *id.* at 166 n.3, in much the same way as the plaintiff in *Leverette* was required to do.  There the plaintiff had to expose herself in a manner specifically designed to allow officials to scrutinize visually her body cavities, not just to squat and cough.  First, the jail officer instructed the plaintiff to bend further and further over, three different times, finally bending all the way over and putting her hand on the floor, while the jail officer attempted to peer into her vagina.  When that failed to satisfy the officer, the plaintiff sat on a bench, with the officer on the floor before her, and was directed to spread her legs open further and further, while the officer peered into her vagina and until the officer was satisfied.  *Id.* at 163-64.

Here, plaintiffs' deposition testimony, compared with their earlier claims that the deputies "appeared" to be looking at their private parts, firmly establishes that plaintiffs were subject to standard strip searches, not visual body cavity searches, as each is defined by the Fourth Circuit.  Plaintiffs' Declarations and deposition testimony are set forth below.

**1.     Nan Vollette**

In her Declaration, Vollette stated that she asked Deputy Baker, "You are doing a cavity search?" to which Deputy Baker responded, "No, but you do have to bend over and cough."  She stated further that Deputy Baker instructed her to squat and "[t]his whole time she was standing behind me with her body bent to look at my exposed private parts.  She then told me to cough." (Doc. No. 34, Ex. 34-1.)

At deposition, Vollette admitted that Deputy Baker instructed Vollette to turn away from face the wall, squat and cough. Dep. of Nancy Vollette, Nov. 6, 2012, p. 5, attached hereto as Ex. 1. Defense counsel then queried as follows:

> Q:   *You said you assume that she was looking at you, but you didn't see her?*
> A:   *I'm looking straight ahead, and she's behind me. That's how it was set up.*
> Q:   *So at no time did you ever see her peering at your vagina, did you?*
> A:   *No, I didn't see that.*
> Q:   *Okay.*
> A:   *She simply told me she was going to do that.*
> Q:   *She said she was going to look in your vagina?*
> A:   *She's going to look down there and see. When I cough, I'm going to see if anything drops out.*

*Id.*, pp. 8-9.

### 2.   Barbara Stokley

In her Declaration, Stokley stated, "Deputy Baker told me that I needed to turn around, to squat, and cough. She then told me to bend over further and she appeared to have lowered her head and was looking at my private parts." (Doc. No. 34, Ex. 34-3.)

At deposition, counsel queried as follows:

> Q:   *When you turned around … and bend down, squatted down and coughed, was Deputy Baker behind you?*
> A:   *… Yeah, she was – you know she was behind me.*
> Q:   *Behind you, so you didn't know what she was doing. As you were squatting to cough, you don't know what she was doing behind you, do you?*
> ***
> A.   *I didn't know what she was doing. You know, I just knew she was telling me I had to bend over further.*
> ***
> A:   *And then she told me to cough.*
> ***
> Q:   *-- during the strip search … she never peered into your vagina?*
> A:   *I don't know if she did or not. I know she told me to bend over further. I don't know if she was – like I said, I don't know what she was doing behind me.*

Dep. of Barbara Stokley, Nov. 6, 2012, pp. 3-7, attached hereto as Ex. 2.

### 3.    Marilyn Scott

In her Declaration, Scott stated, "Deputy Baker told me to turn around, to bend over, and to cough.  When I bent over and coughed, Deputy Baker told me to bend over lower because I was not low enough.  I proceeded to bend over lower and coughed again.  I believe Deputy Baker was behind me looking at my private parts."  (Doc. No. 34, Ex. 34-5.)

At deposition, Scott testified as follows:

> Q:    *Right behind you.  Okay.  She said, Turn around?*
> A:    *Bend over and cough.*
>                             \*\*\*
> Q:    *Did you do that?*
> A:    *Yes, and she said, Bend over lower because you are not low enough.*
> Q:    *Okay.*
> A:    *So I bent over lower.*
> Q:    *Okay.*
> A:    *I said, Am I low enough now?*
> Q:    *Okay.*
> A.    *She said, Yes, cough.*
> Q:    *And so she was standing at the time?*
> A.    *Yes.*
> Q:    *Okay.  You didn't turn around to see what she was doing, did you?*
> A.    *No.*
>                             \*\*\*
> Q:    *You never saw her looking in close at your private parts, did you?*
> A.    *I know she was close enough to my private part[s].  She was behind me.  She was close enough behind.*
> Q:    *She was behind you, but you don't know what – as far as you didn't see what she was doing, did you?*
> A.    *No, sir.*

Deposition of Marilyn Scott, Nov. 6, 2012, pp. 6-7, 10, attached hereto as Ex. 3.

### 4.    Darnetta Austin

In her Declaration, Austin stated, "Deputy Baker then told me to turn around so that my back was facing her, to bend over, squat and then cough.  During this time, Deputy Baker was standing behind me and appeared to be hunched over and was looking at my private parts."  (Doc. No. 34, Ex. 34-8.)

At deposition, Austin testified:

> Q:      … Now, when she told you to squat and cough, did you turn your back to her?
> A:      yes.  She told me I had to turn my back to her, and then she proceeded to tell me
> I was not low enough, I had to get lower –
> Q:      Okay.
> A:      -- and squat and cough.
> Q:      All right.  And so when you turned – when you turned around, you turned your
> back to her and squatted and [coughed], you don't know what Deputy Baker
> was doing?
> A:      No, sir, I do not.
>                                      ***
> Q:      Did you see if she was looking at you?
> A:      I know she was looking at me.
> Q:      How do you know if you weren't looking at her?
> A.      Because I was – I mean that's an uncomfortable position to be in.
> Q:      Okay.
> A:      So, of course, I, you know turned to look at her.
> Q:      So she was looking at you as you squatted and coughed?
> A:      Yes.
> Q:      How far away from you was she at that point?
> A:      Still the same distance, you know, three or four feet.
> Q:      Was she standing?
> A.      Yes, she was standing.

Dep. of Darnetta Austin, Nov. 6, 2012, pp. 4-6, attached hereto as Ex. 4.

**5.    Verita Braswell**

In her Declaration, Braswell stated that Deputy Baker, "asked me to turn around with my back to her, to bend over, stoop down, and then to cough.  Although I could not see her face, she appeared to be bend over and looking at my genital area." (Doc. No. 34, Ex. 34-7.)

At deposition, Braswell testified as follows:

> Q:      … Other than watching you squat and cough, she didn't do – she never saw you
> frontally and looked at your vagina from the front, did she?
>
> A:      Well, you know, if you – medically, it's very visible from behind.

Dep. of Verita Braswell, Nov. 6, 2012, p. 8, attached hereto as Ex. 5.

5

6.     **Yolanda Vines**

In her Declaration, Vines stated, "[Deputy Baker] told me to turn around with my back facing her and to bend over.  I was bent over from my waist with my knees straight while Deputy Baker crouched low to look back there.  After I was in this pose for a few seconds, Deputy Baker then told me to squat and cough while she looked at my private parts again."  (Doc. No. 34, Ex. 34-4.)

At deposition, Vines testified as follows:

Q:     *Okay.  So when you turned around, your back was facing Deputy Baker?*
A:     *Yeah.*
                              \*\*\*
Q:     *Okay.  Did she ever perform a – did you ever see her visually looking into your
        private parts?*
A:     *Yes.*
Q:     *How did you see that when you're bent over with your back to her?*
A:     *I just told you I was looking out the corner of my eye.  I wanted to see what she
        was doing.*

Dep. of Yolanda Vines, Nov. 6, 2012, pp. 7-8, attached hereto as Ex. 6.

7.     **Angelene Cannon-Coleman**

In her Declaration, Coleman stated, "I was then told to turn around with my back facing Deputy Baker and then to squat and cough.  As I was squatting, Deputy Baker appeared to be looking at my private parts."  (Doc. No. 34, Ex. 34-2.)

At deposition, Coleman testified as follows:

Q:     *Did you turn your back to her?*
A:     *Yes.  So she – my derriere was to her.*
Q:     *Right.*
A:     *I'm looking at the wall.*
Q:     *Right.  So you were looking at the wall, and she's behind you.  Okay.  And then
        she told you to squat and cough?*
A:     *Bend your knees –*
Q:     *Right*
A:     *-- squat, and cough.*

> Q:      And so you don't know what she was doing while you were doing that. You were looking at the wall?
> A:      I'm looking at the wall. But if you ask me to bend, squat, and cough, and you're supposed to be doing a cavity search, I'm thinking that you're looking at what you need to look at.
> Q:      Okay. Well, you say cavity search. She didn't say she was going to do a cavity search, did she?
> A:      No.      But I know the purpose of bending, squatting, and coughing.
> Q:      What's the purpose?
> A:      So if you have something in your rectum or in your vagina, if you bend, squat, and cough, it will be ejected.
> Q:      Fall out. Okay
> A.      Yes.
> Q:      So she could have been looking at the floor, couldn't she?
> A:      Maybe she was.

Dep. of Angelene Cannon-Coleman, Nov. 6, 2012, pp. 5-7, attached hereto as Ex. 7.

**8.     Emma Lee Floyd-Sharp**

In her Declaration, Floyd-Sharp stated that, "Deputy Baker instructed me to bend over and to touch my ankles. As I was doing this, she was standing behind me and appeared to be looking at my private parts. She then told me to squat and cough while she bent over and again looked at my exposed private parts." (Doc. No. 34, Ex. 34-9.)

At deposition, Floyd-Sharp testified as follows:

> Q:      So did you squat and cough?
> A:      Yes.
> Q:      … So at that point, when you did that, did [Deputy Baker] have you turn around so your back was facing her?
> A:      Yes.
>
>                         ***
>
> Q:      …And where was the deputy, was she behind you?
> A:      Yes, sir.
> Q:      Okay. And so when you squatted and coughed, you couldn't see what she was doing when you were squatting and coughing; is that right?
> A:      No, sir.

Dep. of Emma Lee Floyd-Sharp, Nov. 6, 2012, pp. 6-7, attached hereto as Ex. 8.

### 9.   Hashena Hockaday

In her Declaration, Hockaday stated, "Deputy Mabry told me that I had to turn around with my back facing her, to squat, and cough.  I placed my hands on my knees and semi-squatted with my back facing Deputy Mabry.  Although I had my back facing her, I believe that as I was squatting, she was looking at my exposed private parts."  (Doc. No. 34, Ex. 34-6.)

At deposition, Hockaday testified as follows:

> A:     *So she said, turn around, squat, and cough . . .*
>
>                          ***
>
> Q:     *Right.  Okay.  And when you were doing that, were you facing the wall?*
> A:     *Yes.  I was facing the toilet stool actually.*
> Q:     *Okay.  And so you didn't see what Deputy [Mabry] was doing when you were doing that, did you?*
> A:     *No.*
> Q:     *Was she standing behind you?*
> A:     *Yes.*
> Q:     *Okay.  She didn't squat down behind you, did she?*
> A:     *I don't know.  She's already short.*
> Q:     *Okay.  You don't know what she did.  But you didn't see her bend down or anything to peer into your private parts, right?*
> A:     *I wasn't looking at nothing but the toilet stool.*

Dep. of Hashena Hockaday, Nov. 6, 2012, pp. 16-17, attached hereto as Ex. 9.


Unlike the visual body cavity search described by the Fourth Circuit in *Leverette*, plaintiffs consistently describe a standard strip search - disrobe, squat and cough - with no indication that Deputy Baker or Deputy Mabry scrutinized their body cavities.  Where plaintiffs' testimony comports with the Deputies' descriptions of the searches, there is no dispute as to fact.  Plaintiffs underwent standard strip searches, requiring defendants to establish "reasonable suspicion" for the searches, rather than to set forth "more particularized and individualized ... supporting information."  *Leverette*, 247 F.3d at 168.

For the reasons set forth in their Motion for Summary Judgment and Reply to Opposition to Motion for Summary Judgment, as supplemented above, defendants respectfully request this Court to grant summary judgment in their favor and to dismiss plaintiffs' claims, with prejudice.

BILL WATSON
ELIZABETH BAKER
WILLIAM SUGG
JACK BENZIE
YOLANDA NATIVIDAD
CANDACE MABRY
MACK KEESE

_____/s/ Jeff W. Rosen_____
Of Counsel

Jeff W. Rosen, Esquire
Virginia Bar # 22689
*Counsel for Defendants*
Pender & Coward
222 Central Park Avenue
Virginia Beach, Virginia  23462
(757) 490-6253
(757) 497-1914
jrosen@pendercoward.com

Lisa Ehrich, Esquire
Virginia Bar # 32205
*Counsel for Defendants*
Pender & Coward
222 Central Park Avenue
Virginia Beach, Virginia  23462
(757) 490-6253
(757) 497-1914
lehrich@pendercoward.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of November, 2012, I electronically filed the foregoing *DEFENDANTS' SUPPLEMENT TO MOTION FOR SUMMARY JUDGMENT* with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David P. Morgan, Esq. (VSB #70211)
Cooperating Attorney for the ACLU of Virginia
Cravens & Noll, P.C.
9011 Arboretum Parkway
Suite 200
Richmond, VA 23236
(804) 330-9220
(804) 330-9458 (Facsimile)
dmorgan@cravensnoll.com
*Counsel for plaintiff*

Rebecca K. Glenberg, Esq. (VSB #44099)
Thomas O. Fitzpatrick, Esq. (VSB #80364)
American Civil Liberties Union of
Virginia Foundation, Inc.
530 E. Main Street, Suite 310
Richmond, VA 23219
(804) 644-8080
(804) 649-2733 (Facsimile)
rglenberg@aclusva.org
tfitzpatrick@acluva.org
*Counsel for plaintiff*

      /s/ Jeff W. Rosen
Jeff W. Rosen
Va. Bar Number 22689
Pender & Coward, P.C.
*Counsel for Defendants*
222 Central Park Avenue
Virginia Beach, VA 23462
(757) 490-3000
(757) 502-7351
jrosen@pendercoward.com

1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF VIRGINIA
2                  Norfolk Division

3

4      _____

5    NAN VOLLETTE, et al,

6              Plaintiffs,

7                              EXCERPT

8         v           Case No. 2:12-cv-231

9

10   BILL WATSON, et al,

11             Defendants.

12   _____

13

14      DEPOSITION UPON ORAL EXAMINATION OF

15                NANCY VOLLETTE

16      Taken on behalf of the Defendants

17          Virginia Beach, Virginia

18            November 6, 2012

19

20              -----oOo-----

21

22            INGRAM REPORTING
           2520 Queens Elm Place
23       Virginia Beach, Virginia  23454
              (757) 481-0935

24

25

Vollette depo exc

5

1    been degraded enough, now she asked me to bend

2    over, and I bent over.

3           Q.      Did she ask you to turn away from

4    her?

5           A.      Yeah.  I turned away from her.

6           Q.      So you are facing -- when she asked

7    you to bend over, you were facing --

8           A.      Yeah.  I turned around and faced

9    the wall.

10          Q.      So she was facing your back?

11          A.      She was behind me.

12          Q.      Behind you.  Okay.  What did she

13   tell you?  She said, Bend over.

14          A.      She said, Bend over, and I guess

15   bending over wasn't what she really meant

16   because I did do that, and she said, No, no.

17   You have got to squat.  You have got to bend

18   your knees.  And so I guess I -- you know, I

19   don't honestly know what I did.  I assume I bent

20   my knees.

21          Q.      Uh-huh.  And did she ask you to

22   squat?  Did she ask you to cough too?

23          A.      She asked me to cough.

24          Q.      All right.  So when you were facing

25   the wall, bent your knees, squatting, coughing,

8

1        A.      I would think she did do a visual

2   body cavity search.

3        Q.      Well, I guess I need to be more

4   specific.  She never actually --

5        A.      She touched me to inspect body

6   cavities, that would not be visual.  That would

7   be a physical body cavity search.

8        Q.      Let me ask you, she didn't do the

9   physical body cavity search, did she?

10       A.      No.

11       Q.      Okay.  And you never saw her

12   peering into your vagina, did you?

13       A.      We just went through that.

14       Q.      Well, you don't know where she was

15   looking when your back was turned to her?

16            MR. MORGAN:  Object to form and

17        asked and answered.  Go ahead.

18

19   BY MR. ROSEN:

20       Q.      Is that right?  You said you assume

21   that she was looking at you, but you didn't see

22   her?

23       A.      I'm looking straight ahead, and

24   she's behind me.  That's how it was set up.

25       Q.      So at no time did you ever see her

Vollette depo exc

9

1   peering at your vagina, did you?

2        A.    No, I didn't see that.

3        Q.    Okay.

4        A.    She simply told me she was going to

5   do that.

6        Q.    She said she was going to look in

7   your vagina?

8        A.    She's going to look down there and

9   see.  When I cough, I'm going to see if anything

10  drops out.

11       Q.    Okay.

12       A.    So when she says, I'm going to look

13  and see, then that tells me she's looking.

14       Q.    Okay.  So she said she's going to

15  look and see if anything drops out when you

16  cough?

17       A.    I ask why for everything.  You want

18  me to cough, why.  You want me to bend over,

19  why.

20       Q.    And what did she say?

21       A.    To see if anything drops out.

22       Q.    Now, I've had everyone else do the

23  same thing.  I've asked them to demonstrate the

24  way they were squatting so I can take a picture.

25  I don't want to embarrass you, but I need to do

1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF VIRGINIA
 2                   Norfolk Division

 3

 4       _____

 5     NAN VOLLETTE, et al,

 6              Plaintiffs,

 7                                   EXCERPT

 8        v              Case No. 2:12-cv-231

 9

10     BILL WATSON, et al,

11              Defendants.

12       _____

13

14         DEPOSITION UPON ORAL EXAMINATION OF

15                 BARBARA STOKLEY

16       Taken on behalf of the Defendants

17           Virginia Beach, Virginia

18              November 6, 2012

19

20               -----oOo-----

21

22             INGRAM REPORTING
              2520 Queens Elm Place
23        Virginia Beach, Virginia   23454
                 (757) 481-0935
24

25
```

EXHIBIT

2

tabbies

3

1      Excerpt of the deposition of Barbara Stokley,

2   taken before Marjorie F. Ingram, Court Reporter, a

3   Notary Public for the State of Virginia at Large,

4   by Notice of counsel as to the time and place, at

5   the offices of Pender and Coward, 222 Central Park

6   Avenue, Virginia Beach, Virginia, at 2:15 p.m.,

7   November 6, 2012, to be used in the trial of the

8   above-entitled cause.

9

10

11                    -----oOo-----

12

13      BARBARA STOKLEY, called as a witness, having

14   been first duly sworn, was examined and testified

15   as follows:

16

17                    EXAMINATION

18

19

20                    -----oOo-----

21

22   BY MR. ROSEN:

23      Q.    When you turned around, turned

24   around and bent down, bent down, squatted down

25   and coughed, was Deputy Baker behind you?

4

1        A.      I'm -- yeah.  Yeah, she was -- you

2    know she was behind me.

3        Q.      Behind you, so you didn't know what

4    she was doing.  As you were squatting to cough,

5    you don't know what she was doing behind you, do

6    you?

7                MR. MORGAN:  Object to the form.

8                MR. ROSEN:  You can answer.

9        A.      I didn't know what she was doing.

10   You know, I just knew that she was telling me I

11   had to bend over further.

12

13   BY MR. ROSEN:

14       Q.      Okay.  All right.  Now, I'm going

15   to ask you which I've asked everyone to do.  Not

16   to embarrass you in any way, but demonstrate how

17   you bent over. I'm going to take a picture of

18   you in that position.  So do you mind doing that

19   for me?

20       A.      No.

21       Q.      Okay.  I need to know what position

22   you were in, so if you could just take and just

23   go in the corner and face away from me.  Face

24   the wall and just demonstrate how you did it.

25       A.      Well, I hope I can get down.

5

1    First, I was like -- she told me to open my

2    legs, and I did, and she told me to -- what I

3    did, I did like this, and then she told me that

4    I had to go over further.

5        Q.    Right.

6        A.    And I just leaned over further.

7        Q.    Just hold that position one second

8    so I can take a picture.  All right.  Okay.

9            (Picture taken)

10        A.    But I was down further to the

11   ground.

12

13   BY MR. ROSEN:

14        Q.    All right.

15        A.    And then she told me to cough.

16        Q.    Okay.  Hold on a second.  I'll see

17   if I got that.  My battery just died.  Hold on a

18   second.  Hold on a second.  The best laid plans.

19   Sorry.  I'm sorry.  I apologize.

20            If you could just one more time

21   just take and just squat the way you were

22   squatting.

23        A.    Okay.  She told me that I needed to

24   open my legs and squat, and I did like this, and

25   then I remember her saying that I had to go over

6

1    further.

2         Q.    Okay.

3         A.    Then I just bent over further, and

4    I stayed in that position for a few seconds, and

5    that was, you know.

6              (Picture taken)

7

8    BY MR. ROSEN:

9         Q.    Okay.  Thank you.

10             MR. ROSEN:  I would make that the

11        exhibit, deposition exhibit.  Copy of the

12        photograph in there.

13

14   BY MR. ROSEN:

15        Q.    Okay.  And now, all right.  So you

16   said as you were doing that, you didn't know

17   what Deputy Baker was doing behind you, right?

18   You were not aware what she was doing behind

19   you?

20        A.    No.

21        Q.    Okay.  And after that, then did she

22   give you back your clothes or you put your

23   clothes back on?

24        A.    Yes.  I picked my clothes up myself

25   and put them back on.

7

1      Q.    All right.  Deputy Baker never

2  physically touched you during the --

3      A.    No.

4           MR. MORGAN:  Object to form.

5

6  BY MR. ROSEN:

7      Q.    -- during the strip search, and she

8  never peered into your vagina?

9      A.    I don't know if she did or not.  I

10 know she told me to bend over further.  I don't

11 know if she was -- like I said, I don't know

12 what she was doing behind me.

13     Q.    Okay.

14     A.    You understand what I'm saying?

15     Q.    So she was behind you.  You don't

16 know what she was doing.  Okay.  You don't know

17 what she was doing.  But I'm saying she never

18 did a visual inspection of your vagina like a

19 body cavity search?

20          MR. MORGAN:  Object to form.

21          MR. ROSEN:  Okay.  You can answer.

22     A.    All I know is that she told me that

23 I had to bend over further.

24

25 BY MR. ROSEN:

1

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
2                    Norfolk Division

3

4      _____

5      NAN VOLLETTE, et al,

6              Plaintiffs,

7                                    EXCERPT

8      v              Case No. 2:12-cv-231

9

10     BILL WATSON, et al,

11              Defendants.

12     _____

13

14          DEPOSITION UPON ORAL EXAMINATION OF

15                  MARILYN SCOTT

16       Taken on behalf of the Defendants

17           Virginia Beach, Virginia

18            November 6, 2012

19

20               -----oOo-----

21

22            INGRAM REPORTING
             2520 Queens Elm Place
23       Virginia Beach, Virginia  23454
               (757) 481-0935
24

25
```

**EXHIBIT**

3

6

1       A.    Yes.

2       Q.    Okay.  And how long did that take

3 you, do you think?

4       A.    I don't know.

5       Q.    Not long.  Okay.  What happened

6 after that?

7       A.    She said, Turn around, bend over

8 and cough.

9       Q.    Okay.  All right.  So now when she

10 said turn around, does that mean that your back

11 was towards her?

12      A.    She came from where she was

13 standing.

14      Q.    Yeah, uh-huh.

15      A.    I turned around.

16      Q.    How close did she come to you?

17      A.    There. (indicating)

18      Q.    Right behind you?

19      A.    Right behind.

20      Q.    Right behind you.  Okay.  She said,

21 Turn around?

22      A.    Bend over and cough.

23      Q.    Okay.  Bend over and cough.

24      A.    So I --

25      Q.    Did you do that?

7

1       A.      Yes, and she said, Bend over lower

2    because you are not low enough.

3       Q.      Okay.

4       A.      So I bent over lower.

5       Q.      Okay.

6       A.      I said, Am I low enough now?

7       Q.      Okay.

8       A.      She said, Yes, cough.

9       Q.      And so was she standing at the

10   time?

11      A.      Yes.

12      Q.      Okay.  You didn't turn around to

13   see what she was doing, did you?

14      A.      No.

15      Q.      Okay.  And so did you do what she

16   asked you to do?

17      A.      Yes.

18      Q.      Okay.  All right.  Now, I'm going

19   to ask you to demonstrate the position you were

20   in at the time if I could.  I'm going to take a

21   picture of you just so I have it recorded if

22   that's okay.

23      A.      I don't care.

24              MR. ROSEN:  Okay.  All right.  Is

25      that all right with counsel?

1      Q.     And then after that, what did you

2   do?

3      A.     I put my clothes on.

4      Q.     Okay.  All right.  And was that --

5   and that was the extent of the --

6      A.     Strip search.

7      Q.     -- strip search?

8      A.     Yes.

9      Q.     Okay.  All right.  So you have

10  no -- you never saw Deputy Baker examining your

11  private parts, did you?

12     A.     I don't understand.

13     Q.     You never saw her looking in close

14  at your private parts, did you?

15     A.     I know she was close enough to my

16  private part.  She was behind me.  She was close

17  enough behind.

18     Q.     She was behind you, but you don't

19  know what -- as far as you didn't see what she

20  was doing, did you?

21     A.     No, sir.

22     Q.     Okay.  All right.  At no time did

23  she ever physically inspect your private parts,

24  did she?  She never conducted a search of your

25  private parts?



1

1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF VIRGINIA
2              Norfolk Division

3

4        _____

5    NAN VOLLETTE, et al,

6              Plaintiffs,

7                              EXCERPT

8        v              Case No. 2:12-cv-231

9

10   BILL WATSON, et al,

11             Defendants.

12       _____

13

14      DEPOSITION UPON ORAL EXAMINATION OF

15              DARNETTA AUSTIN

16      Taken on behalf of the Defendants

17        Virginia Beach, Virginia

18          November 6, 2012

19

20            -----oOo-----

21

22          INGRAM REPORTING
         2520 Queens Elm Place
23   Virginia Beach, Virginia  23454
           (757) 481-0935
24

25

Austin depo exc

4

1    throwing my clothes to the side of the floor,

2    and she was like no, she had to go through my

3    clothes, so she searched my bra, she searched

4    my, you know, she raffled (sic) through my

5    clothes.

6            Q.      Rifled.

7            A.      Rifled.

8            Q.      Was she looking at your clothing

9    and feeling it to see if there was anything

10   inside of it?

11           A.      Yes.

12           Q.      So she was searching each item?

13           A.      She was searching each item.

14           Q.      All right.

15           A.      And so then, she told me that I had

16   to lift up -- big girl -- I had to lift up my

17   breasts.

18           Q.      Uh-huh.

19           A.      Had to lift up my stomach, and then

20   she told me to squat and cough.

21           Q.      All right.  And so when you had to

22   lift up your breasts, she inspected underneath

23   to see if there was anything under there?

24           A.      Yes.

25           Q.      All right.  Now, when she told you

Austin depo exc

1    to squat and cough, did you turn your back to

2    her?

3         A.    Yes.  She told me I had to turn my

4    back to her, and then she proceeded to tell me I

5    was not low enough, I had to get lower --

6         Q.    Okay.

7         A.    -- and squat and cough.

8         Q.    All right.  And so when you

9    turned -- when you turned around, you turned

10   your back to her and squatted and squat and

11   cough, you don't know what Deputy Baker was

12   doing?

13        A.    No, sir, I do not.

14             MR. MORGAN:  Object to form.

15

16   BY MR. ROSEN:

17        Q.    All right.  You don't know what she

18   was doing, do you?

19        A.    No, sir.

20        Q.    Did you see if she was looking at

21   you?

22        A.    I know she was looking at me.

23        Q.    How do you know if you weren't

24   looking at her?

25        A.    Because I was -- I mean that's an

1    uncomfortable position to be in.

2         Q.    Okay.

3         A.    So, of course, I, you know, turned

4    to look at her.

5         Q.    So she was looking at you as you

6    squatted and coughed?

7         A.    Yes.

8         Q.    How far away from you was she at

9    that point?

10        A.    Still the same distance, you know,

11   three or four feet.

12        Q.    Was she standing?

13        A.    Yes, she was standing.  She was

14   standing.

15        Q.    Okay.  Now, I don't mean to

16   embarrass you or anything else, but I would like

17   to just take a picture of you in the position

18   that you were squatting at the time?

19        A.    Okay.

20        Q.    Okay.  So not to embarrass you, but

21   I need to do that, so I'm going to ask every

22   person to do that.  So I'm just going to ask you

23   to just go over squat and cough, and I'll take a

24   picture so we have a copy with the record of

25   what position you were in at the time.

1

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF VIRGINIA

3              Norfolk Division

4

5    NAN VOLLETTE, et al.,        )

6              Plaintiffs,    )        Excerpt

7      v.                      )   Case No. 2:12-cv-231

8    BILL WATSON, et al.,         )

9              Defendants.    )

10

11

12

13      DEPOSITION UPON ORAL EXAMINATION

14           OF VERITA BRASWELL

15    Taken on behalf of the Defendants

16        Virginia Beach, Virginia

17           November 7, 2012

18

19

20          -----oOo-----

21

22           INGRAM REPORTING

23         2520 Queens Elm Place

24    Virginia Beach, Virginia  23454

25           (757) 481-0935

EXHIBIT

5

8

1   parts, did she?

2       A.      No.

3       Q.      She never conducted a physical inspection

4   of your private parts, did she?

5       A.      Just visual.

6       Q.      Okay.  All right.  Other than watching

7   you squat and cough, she didn't do -- she never saw you

8   frontally and looked at your vagina from the front, did

9   she?

10      A.      Well, you know, if you -- medically, it's

11  very visible from behind.

12      Q.      Okay.  All right.  I don't want to

13  embarrass you, but I've asked everyone to take and just

14  demonstrate the position they were in when they were

15  asked to squat and cough.  I took a photo of that.  So

16  I would ask you to do that as well.  If you could just

17  face the wall and demonstrate the position you were in

18  when you were asked to squat and cough.  Can you do

19  that for me?

20      A.      And I also told her that I couldn't squat

21  all the way because I have bad knees.

22      Q.      Okay.  I just need you to just -- over

23  here so I can -- just come over here.  And just

24  demonstrate the position you were in when you had to

25  squat and cough, if you would.

1

1        UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF VIRGINIA

3            Norfolk Division

4

5  NAN VOLLETTE, et al.,          )

6              Plaintiffs,  )  Excerpt

7      v.                    )  Case No. 2:12-cv-231

8  BILL WATSON, et al.,           )

9              Defendants.  )

10

11

12

13        DEPOSITION UPON ORAL EXAMINATION

14            OF YOLANDA VINES

15      Taken on behalf of the Defendants

16        Virginia Beach, Virginia

17          November 7, 2012

18

19

20          -----oOo-----

21

22          INGRAM REPORTING

23        2520 Queens Elm Place

24    Virginia Beach, Virginia  23454

25          (757) 481-0935

Vines exc

1          A.      So I did it.  And then I turned around,

2    and I bent over.

3          Q.      Okay.  So when you turned around, your

4    back was facing Deputy Baker?

5          A.      Yeah.

6          Q.      Okay.  All right.  And you bent over?

7          A.      I bent over, I promise you, for like a

8    minute.  And then she goes, Oh, no.  You have to squat.

9    So I, like, kind of got mad, and I was like, Well, why

10   didn't you tell me that first?  And then so I squatted.

11   And she made me cough.  And then she stood right there

12   while I put my clothes back on and watched me put my

13   clothes on.  And then I left.

14         Q.      Okay.  Well, when you turned your back

15   and had to bend over and squat, you couldn't see what

16   she was doing, right?  What Deputy Baker was doing,

17   could you?

18         A.      Her face was this close to my butt.

19         Q.      Well, if you're looking forward, how do

20   you know where her face was?

21         A.      No.  Because when I bent down, I still

22   looked.  I wanted to see --  she's -- her gender is --

23   I mean, not her gender, but her sexual preference is --

24   questionable.  So I was looking at her like she was

25   looking at me.

1        Q.      Uh-huh.

2        A.      So I wanted to see what she was looking

3   at.  Because I was already upset that she asked me to

4   bend over.  When I bent over, I bent all the way over

5   and touched my toes, so I could see her right there.

6   She was right behind me.  And then she was like, Oh,

7   no.  You have to squat.  And then that's when I

8   squatted, but I still, like, was looking kind of when I

9   did it.

10       Q.      Was she standing or -- was she standing

11  up?

12       A.      No.  She was stooping.

13       Q.      She was stooping.  How far away was she?

14       A.      Probably closer than she is to me.

15       Q.      All right.  Closer than two feet?

16       A.      Yes.

17       Q.      Okay.  Did she ever touch you?

18       A.      No.

19       Q.      Okay.  Did she ever perform a -- did you

20  ever see her visually looking into your private parts?

21       A.      Yes.

22       Q.      How did you see that when you're bent

23  over with your back to her?

24       A.      I just told you I was looking out the

25  corner of my eye.  I wanted to see what she was doing.

Vines exc

1

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF VIRGINIA

3               Norfolk Division

4

5    NAN VOLLETTE, et al.,        )

6                Plaintiffs,   )   Excerpt

7        v.                     )   Case No. 2:12-cv-231

8    BILL WATSON, et al.,        )

9                Defendants.   )

10

11

12

13        DEPOSITION UPON ORAL EXAMINATION

14         OF ANGELENE CANNON-COLEMAN

15       Taken on behalf of the Defendants

16         Virginia Beach, Virginia

17            November 7, 2012

18

19

20              -----oOo-----

21

22            INGRAM REPORTING

23          2520 Queens Elm Place

24     Virginia Beach, Virginia  23454

25              (757) 481-0935

Coleman exc

5

1   on because you have inspected what you needed to

2   inspect --

3          Q.     Right.

4          A.     -- which is under my breast.  She said,

5   Ms. Coleman, you can't put your top clothes back on.  I

6   said, Deputy Baker, you're standing right here on top

7   of me.  You actually want me to actually really take

8   all of my clothes off at one time?  She said, Yes.

9   That's what a strip search is, Ms. Coleman.  I said, I

10  understand what a strip search is, Deputy Baker.  I

11  said, But you're in here looking at me.  You see I have

12  nothing up here, so now I want to put my top clothes

13  back on and then I will gladly take my bottom clothes

14  off for you.

15         Q.     Uh-huh.

16         A.     She said, You know what a strip search

17  is, Ms. Coleman.  I need you to take all your clothes

18  off.  I proceeded -- I took the rest of my clothes off.

19  I placed them on the floor.  She asked me to bend over,

20  squat, and cough.

21         Q.     Did you turn your back to her?

22         A.     Yes.  So she -- my derriere was to her.

23         Q.     Right.

24         A.     I'm looking at the wall.

25         Q.     Right.  So you were looking at the wall,

1    and she's behind you.  Okay.  And then she told you to

2    squat and cough?

3         A.    Bend your knees --

4         Q.    Right.

5         A.    -- squat, and cough.

6         Q.    And so you don't know what she was doing

7    while you were doing that.  You were looking at the

8    wall?

9         A.    I'm looking at the wall.  But if you ask

10   me to bend, squat, and cough, and you're supposed to be

11   doing a cavity search, I'm thinking that you're looking

12   at what you need to look at.

13        Q.    Okay.  Well, you say cavity search.  She

14   didn't say she was going to do a cavity search, did

15   she?

16        A.    No.  But I know the purpose of bending,

17   squatting, and coughing.

18        Q.    What's the purpose?

19        A.    So if you have something in your rectum

20   or in your vagina, if you bend, squat, and cough, it

21   will be ejected.

22        Q.    Fall out.  Okay.

23        A.    Yes.

24        Q.    So she could have been looking at the

25   floor, couldn't she?

1        A.      Maybe she was.

2        Q.      Okay.  And so after that, then what

3   happened next?

4        A.      Then I put my clothes back on.  She

5   stayed in there with me while I was redressing myself.

6   We came out.  Lieutenant Suggs was right around the

7   corner.  They searched my bag which had my lunch in it.

8   They searched my uniform jacket.  I was allowed to go

9   upstairs and clock in and proceed with my shift.

10       Q.      Okay.  At no time during the strip search

11  did Deputy Baker ever touch you; is that right?

12       A.      No, she didn't touch me.

13       Q.      Okay.  All right.  Now, I've been asking

14  everyone to just demonstrate the position they were in

15  when they were asked to squat and cough, and I was

16  taking photographs.  So I've done that with everyone,

17  so if you wouldn't mind demonstrating that so I can see

18  the position you were in at the time.

19              If you could face the wall -- you said

20  you were facing the wall, right?

21       A.      (The witness complies.)

22              (A photograph was taken.)

23

24              -----oOo-----

25

Coleman exc

1

EXHIBIT

8

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF VIRGINIA

3              Norfolk Division

4

5    NAN VOLLETTE, et al.,        )

6              Plaintiffs,   )  Excerpt

7       v.                    )  Case No. 2:12-cv-231

8    BILL WATSON, et al.,        )

9              Defendants.   )

10

11

12

13        DEPOSITION UPON ORAL EXAMINATION

14            OF EMMA FLOYD

15      Taken on behalf of the Defendants

16          Virginia Beach, Virginia

17             November 7, 2012

18

19

20             -----oOo-----

21

22          INGRAM REPORTING

23        2520 Queens Elm Place

24      Virginia Beach, Virginia  23454

25            (757) 481-0935

Floyd exc

6

1   over.  I just bent over.  She says, No.  You have to

2   squat down and cough.  So I said, Okay.  Fine.  Let's

3   just do it.  So I'm starting to put my clothes back on.

4        Q.    So did you squat and cough?

5        A.    Yes.

6        Q.    Okay.  Let me ask you about that.  So at

7   that point, when you did that, did she have you turn

8   around so your back was facing her?

9        A.    Yes.

10       Q.    Okay.  So after you took all your clothes

11   off -- let me ask you if that's right.  After she asked

12   you to disrobe, then she checked the items of clothing,

13   she asked you to turn so your back was facing her,

14   right?

15       A.    Yes.

16       Q.    And she asked you to squat and cough?

17       A.    Yes, sir.

18       Q.    Okay.  So were you -- the front of you

19   was facing the wall of the room?

20       A.    No, sir.  I was facing the window.

21       Q.    The window.  All right.  And where was

22   the deputy, was she behind you?

23       A.    Yes, sir.

24       Q.    Okay.  And so when you squatted and

25   coughed, you couldn't see what she was doing when you

Floyd exc

1    were squatting and coughing; is that right?

2         A.    No, sir.

3         Q.    Okay.  All right.  And so after you did

4    that, then did she allow you to get dressed again?

5         A.    No, sir.  Because I only had -- I had my

6    bottoms off.

7         Q.    Oh, okay.

8         A.    The bottom part.  So I started to put

9    that on.  Then she said, You have to take your top off.

10   Take my -- I said, So -- well, she said, You have to

11   take your top off. I said, No.  I'm going to put my

12   bottoms back on first.  She said, No.  You have to be

13   all the way naked.

14        Q.    Right.

15        A.    I said, Well, I'm not going to take all

16   my stuff off.

17        Q.    Okay.

18        A.    I put my underwear back on.

19        Q.    Right.

20        A.    So she tells me to take my shirt off.  I

21   did that.  I took my bra off.  She did that, and --

22        Q.    When you say, She did that, what, she

23   inspected it?

24        A.    Yes, sir.

25        Q.    Okay.  All right.

1

```
 1        UNITED STATES DISTRICT COURT

 2        EASTERN DISTRICT OF VIRGINIA

 3              Norfolk Division

 4

 5   NAN VOLLETTE, et al.,        )

 6             Plaintiffs,        )        Excerpt

 7      v.                        )   Case No. 2:12-cv-231

 8   BILL WATSON, et al.,         )

 9             Defendants.        )

10

11

12

13        DEPOSITION UPON ORAL EXAMINATION

14             OF HASHENA HOCKADAY

15        Taken on behalf of the Defendants

16           Virginia Beach, Virginia

17              November 8, 2012

18

19

20              -----oOo-----

21

22             INGRAM REPORTING

23           2520 Queens Elm Place

24       Virginia Beach, Virginia  23454

25              (757) 481-0935
```

EXHIBIT
9

Hockaday depo exc

16

1    the gloves you wear in the kitchen.

2           Q.    Okay.  Got you.

3           A.    So she said, Turn around, squat, and

4    cough.  And that's when I said -- I was about to get

5    aggressive.  And I said, You're not going to touch me,

6    are you?

7           Q.    Uh-huh.

8           A.    Because why else would you squat?

9           Q.    Right.

10          A.    And she said, No, I'm not going to touch

11   you.  So I turned around, and I squatted, and then she

12   told me to cough.

13          Q.    Uh-huh.  Okay.

14          A.    And all I did was clear my throat because

15   I was just so upset at this point that I didn't even

16   want to cough.

17          Q.    Right.  Okay.  And when you were doing

18   that, were you facing the wall?

19          A.    Yes.  I was facing the toilet stool

20   actually.

21          Q.    Okay.  And so you didn't see what Deputy

22   Mabree was doing when you were doing that, did you?

23          A.    No.

24          Q.    Was she standing behind you?

25          A.    Yes.

1          Q.     Okay.  She didn't squat down behind you,

2     did she?

3          A.     I don't know.  She's already short.

4          Q.     Okay.  You don't know what she did.  But

5     you didn't see her bend down or anything to peer into

6     your private parts, right?

7          A.     I wasn't looking at nothing but the

8     toilet stool.

9          Q.     Okay.  And after that, then what

10    happened?

11         A.     And then she gave me my clothes one by

12    one.

13         Q.     Okay.  And you put them back on?

14         A.     And she watched me put them on.

15         Q.     Okay.  And then what?

16         A.     And then I can't remember any

17    conversation.  I can't -- I remember my mouth moving,

18    but I don't remember -- I remember her mouth moving,

19    and I remember the lieutenant -- I mean -- I forget

20    what he is.  Sergeant Keyes, I remember him trying to

21    say something to me, but I couldn't hear any noise.

22         Q.     You didn't comprehend what they were

23    saying?

24         A.     No.  Not -- I don't remember -- I

25    remember my mouth moving now, but I don't remember